BOWYER *v.* PROFESSIONAL UNDERWRITERS.

1. Insurance—Question of Fact—Authority of Adjuster.

Record in garnishment proceedings against insurer of defendant against whom one injured when treated for removal of unsightly growths of hair on face and arms had recovered judgment, *held*, sufficient to raise question of fact for jury as to whether alleged adjuster for insurer had authority to act from insurer as its adjuster (3 Comp. Laws 1929, § 12352).

2. Same—Evidence—Waiver of Notice of Claim.

Evidence, in garnishment proceedings against insurer, on issue of authority of adjuster to waive compliance with provisions of policy as to notice of claim for damages and otherwise act as adjuster with respect to plaintiff's claim against defendant against whom plaintiff recovered judgment for wrongful injury in removal of unsightly growths of hair *held*, sufficient to sustain finding for plaintiff (3 Comp. Laws 1929, § 12352).

3. Same—Garnishment—Defense of Suits—Waiver—Finding of Jury.

Finding of jury for plaintiff in garnishment proceedings against insurer that it had waived express provisions of policy with respect to receipt of copy of process and pleadings or was estopped to assert nonliability because it had not alleged such reason in refusing to defend suit upon defendant's demand that it do so *held*, controlling.

4. Appeal and Error—Garnishment—Finding of Jury.

Jury's verdict on conflicting evidence as to controlling questions
    of fact in trial of garnishment proceedings as to authority of
    adjuster and waiver of policy provisions as to notice to insurer
    or estoppel to assert nonliability therefor *held*, final and to
    require judgment in accordance with verdict.

Appeal from Wayne; Moynihan (Joseph A.), J.
Submitted June 19, 1934. (Docket No. 53, Calendar
No. 37,766.) Decided October 23, 1934.

Garnishment proceedings by Helen Bowyer
against Ada Hitchener and others, principal defendants, and Professional Underwriters, a Michigan
reciprocal insurance exchange, garnishee defendant.
Verdict for plaintiff. Judgment for garnishee defendant *non obstante veredicto*. Plaintiff appeals.
Reversed.

*Louis Starfield Cohane* and *Regene Freund Cohane* (*C. Upton Shreve*, of counsel), for plaintiff.

*Rodgers & Dunn*, for garnishee defendant.

North, J. Plaintiff contracted with the principal
defendants for the removal of an objectionable and
unsightly growth of hair on her forearms and
axillæ and upon her chin. She sustained injuries
incident to the treatment administered by the principal defendants. In her suit for damages she recovered judgment for $8,000. One of the principal
defendants, Rudolph's Tricho Institute, was insured
against such liability as was involved to the extent
of $5,000 in the Professional Underwriters, a Michigan reciprocal insurance exchange. In an effort to
obtain satisfaction of her judgment, plaintiff garnisheed the insurer. On trial of the garnishment
issue before a jury the defense was urged that by

failing to comply with the provisions of the insurance policy the insured defendant had breached the contract and had thereby released the insurer. The manner in which the garnishee defendant claimed the insurance policy issued by it had been breached is: That the insured failed to give the insurer notice at its home office of the happening of the injury for which plaintiff recovered damages; that after suit was started the summons and declaration therein were not forwarded by the insured to the insurer, and further that there had been no waiver of these provisions in the insurance policy. Upon trial of the garnishment issue the garnishee defendant offered no testimony. On plaintiff's proofs the jury found against the garnishee defendant and rendered a verdict in favor of plaintiff for $5,000; but on motion of the garnishee defendant judgment in its favor *non obstante veredicto* was entered. Plaintiff has appealed, asserting that in so entering judgment the trial court was in error.

Judgment *non obstante veredicto* was based by the trial judge upon his finding that the undisputed testimony disclosed failure of the insured to comply with the provisions of the insurance policy hereinafter quoted, thereby releasing the insurer from liability incident to this particular risk; and further that there was no competent testimony of waiver of these provisions of the policy issued by the garnishee defendant. We quote the material portions of the policy:

"Subject to the following conditions: First. That in order to create any liability under this policy against indemnitor, indemnitee shall as a condition precedent to indemnity hereunder, upon the occurrence of any act or event, whereby there would be reasonable grounds to believe that any

person or persons may have right of action against indemnitee, said indemnitee shall within five days from the date of such event or act, notify indemnitor thereof in writing or by telegraph at indemnitor's expense, and shall within ten days from the date of such event or act transmit a written statement to indemnitor at its home office in Grand Rapids, Michigan, giving completely and in detail the fullest information obtainable concerning said matter and the names and addresses of all persons whom indemnitee has reason to believe might have any knowledge or information thereof.''

The next paragraph of the policy provides that when any suit is brought against the indemnitee the latter shall immediately notify the former thereof, and the process and pleadings served on it shall be forwarded to the indemnitor at its home office in Grand Rapids, Michigan. The policy concludes with the following paragraph:

''Eleventh. None of the terms, conditions, limitations or provisions in this policy shall be waived, changed, extended or altered, by any agent or representative, except upon the written approval and consent of indemnitor herein signed by its authorized representative and attached to this policy.''

On this trial of the garnishment issue it appeared that the insured had failed to fully comply with the rules of the insurance policy above quoted; but plaintiff urged that there had been waiver of such provisions by the garnishee defendant. Such waiver plaintiff asserts resulted from the conduct of one R. Putnam Jones who plaintiff claimed acted as an agent and adjuster of insurer. At the time of this trial Jones was not in the employ of the insurer and neither party produced him as a witness. The sole issue submitted to the jury was whether from the

evidence presented there was waiver of the conditions of the policy above quoted. The garnishee defendant denied that Jones had either actual or implied authority to waive the conditions of the policy. Plaintiff asserted the contrary. As noted, the jury found for plaintiff, and appellant contends that judgment should have been entered on the verdict rendered.

Appellee's position is that Jones was employed by it from 1925 to 1929 to sell insurance for it in Detroit, that he was never held out by appellee as an adjuster, and that he had no authority as an adjuster of appellant's claim. His authority to waive any of the provisions of the insurance policy is denied by appellee. Notwithstanding appellee's contention above outlined, the testimony discloses that when the plaintiff complained to the principal defendants of her injuries, which she did in December, 1925, the defendants referred her to R. Putnam Jones. The matter was taken up with R. Putnam Jones and there were numerous interviews between him and plaintiff. The record discloses that during the period above noted or shortly prior thereto it was a general course of conduct on the part of the insured when claims were presented against it of the character covered by appellee's policy to report the matter through Jones who thereupon made investigations looking toward adjustments. After plaintiff first interviewed Jones relative to her injuries he had such knowledge of the material facts and circumstances concerning her claim as fully complied with the requirements of the policy, providing Jones had either express or implied authority to represent appellee as an adjuster of plaintiff's claim. At least if Jones was an adjuster, his course of conduct relative to plaintiff's

claim would estop the insurer from claiming lack of notice. Notwithstanding appellee was served with notice to produce its records and correspondence relating to the principal defendants and those relating to R. Putnam Jones "as agent or representative or adjuster for the said garnishee defendant showing his dealings with, or in behalf of, or as a representative of the garnishee defendant," the latter failed to produce any such records, claiming it no longer had them. Regardless of whether we consider the failure to produce as significant, the record contains positive testimony that on other occasions Jones had acted as an adjuster for claims of this character made against the principal defendants. Blanche Higgins, an employee of the insured from 1925 to 1930, testified:

"I recall I had occasion to take up with R. Putnam Jones for the Professional Underwriters from five to nine cases. Two or three of these five to nine cases during that period were settled by the Professional Underwriters making payment of them.

"Q. Were those settlements and payments made through R. Putnam Jones, as you remember?

"A. Yes, sir. It was I at the appointment desk who made reports of these matters from time to time to R. Putnam Jones. I had no business dealings with anybody else representing the Professional Underwriters at any time except Mr. Jones. * * * The Bowyer case was not one of those (cases). I didn't call him about that."

The statutes of this State provide that insurance adjusters shall be licensed by the department of insurance, 3 Comp. Laws 1929, § 12352. Incident to an obvious effort to comply with the statutory requirement correspondence passed between appellee and the insurance department. We quote a por-

tion of that appearing in the record. On December 1, 1925, the insurance department wrote appellee as follows:

"Gentlemen: We are in receipt of your check #B1305 in the amount of $8 and applications for adjuster's certificate of authority for the following: Edward H. Brink, Henry A. Brink, *Raymond Putnam Jones* and Ora M. Anway."

Again on December 16, 1925, the department wrote appellee as follows:

"Gentlemen: We are inclosing herewith adjusters' certificates of authority in the names of Henry A. Brink, Edward H. Brink, *Raymond Putnam Jones* and Ora M. Anway, together with official receipt No. 40460 in the amount of $8 covering fees for same."

March 15, 1926, appellee through its president, H. A. Brink, wrote the department of insurance:

"I note that Adjuster's Certificate of Authority issued to H. A. Brink, E. H. Brink, L. E. Smart, *R. P. Jones* and O. M. Anway, all expired on the last day of February.

"Will you please send us the proper blanks and the amount of fees in order that we can give the matter our immediate attention?"

In reply to the above the insurance department wrote appellee as follows:

"We are in receipt of your letter of March 15th, with reference to the following named adjusters: H. A. Brink, E. H. Brink, L. E. Smart, *R. P. Jones* and O. M. Anway.

"Inasmuch as the applications were mailed to this department the latter part of the year 1925 and by reason of the fact that there was only a month or so before the beginning of the license year, February,

1926, our intentions were that your certificates of authority were to read from the date hereof until the last day of February, A. D. 1927. If the certificates are not so dated, kindly return same and we will forward corrected ones.''

In a later letter (February 23, 1928) to the insurance department, the appellee referred to the four men mentioned in the letter last above quoted as being men ''who have the authority to adjust claims for this company.'' The record contains other testimony of similar purport tending to disclose either actual or implied authority on the part of Jones to represent appellee as its adjuster incident to plaintiff's claim. While it was modified by his cross-examination Dr. Jamieson on direct examination testified:

''I saw Miss Bowyer at the request of the Professional Underwriters Association. * * * I reported to the Professional Underwriters the condition of her skin as I found it at that time. * * * The bill was paid by them, I believe, in the next year.''

Cross-examination disclosed that the doctor was requested to act in this case by Jones and the doctor's report may have been made to Jones; but the record justifies appellant's contention that the doctor was paid for his services by the garnishee defendant giving him credit on an insurance premium which the doctor owed it for a policy he carried in the Professional Underwriters. It would reasonably follow that the garnishee defendant knew of plaintiff's claim and that Jones had employed Dr. Jamieson in behalf of the garnishee defendant. Review of other phases of the testimony tending to sustain appellant's position seems unnecessary. We are satisfied that the record presents a question of

fact as to whether Jones had authority from the garnishee defendant to act as an adjuster of plaintiff's claim.

After plaintiff's injuries became apparent and before she instituted suit, Jones on various occasions informed her that she would be taken care of as to her injuries, and that any injury she might sustain "was fully covered by the Professional Underwriters." And plaintiff testified that she complied with the requests of Mr. Jones, that she withheld suit and awaited results, and in the meantime she consulted skin specialists at the request of Mr. Jones. If Jones had authority to act as adjuster of plaintiff's claim, the jury was justified in finding waiver of the notice of her having made a claim for damages against the insured. *Cohen* v. *London Guarantee & Accident Co.*, 247 Mich. 226.

Appellee also asserts nonliability because of the insured's failure to comply with the policy's provision that in the event suit was brought on a claim covered by the policy a copy of the process and of the pleadings filed should be forwarded by the insured to the insurer. However, the record discloses that after suit had been instituted a demand was made upon the insurer to defend in behalf of the insured. The insurer refused to do so and gave specific reasons for such refusal. There is positive testimony that the reasons for such refusal did not include that of failure of the insured to notify the insurer suit had been instituted. This, appellant asserts, was a waiver of any such defense and estopped appellant from basing a claim of nonliability on the insured's failure to give the notice of suit, forward copy of process, etc. That there may be waiver or estoppel under such circumstances has been held in numerous decisions of this court.

*Towle* v. *The Ionia, E. & B. F. M. Fire Ins. Co.,* 91 Mich. 219; *Smith* v. *German Ins. Co.,* 107 Mich. 270 (30 L. R. A. 368); *Douville* v. *Farmers' Mutual Fire Ins. Co.,* 113 Mich. 158; *Harvard Co.* v. *Himmelein,* 226 Mich. 691; *Dickinson* v. *Homerich,* 248 Mich. 634. There is a direct conflict in the testimony on this phase of the instant case. The verdict of the jury must have resulted from a finding that the testimony prevailed in favor of appellant. The jury's determination, under the circumstances, is controlling.

Many authorities are cited in appellee's brief as to the reasonableness or validity of provisions in insurance policies such as those above quoted. We are quite in accord with appellee's contention in this particular. But we are not here concerned with that phase of the law, nor is it questioned that a breach of such provisions by the insured may release the insurer from contractual obligations to which it otherwise would be subjected. But in the instant case the controverted issue is whether the insurer waived these provisions of its policy or is estopped from making a defense thereunder. We have held in former decisions that the insurer may waive such provisions of its policy or be estopped from asserting nonliability thereunder, notwithstanding the policy contains express provisions against waiver, etc., such as are found in paragraph 11 hereinbefore quoted from appellee's policy. *Pollock* v. *German Fire Ins. Co.,* 127 Mich. 460; *Bennett* v. *Western Underwriters' Ass'n,* 130 Mich. 216; *Dickinson* v. *Homerich, supra.* The record here on review discloses controlling issues of fact as to which the testimony is in direct conflict. The jury's verdict on these issues is final. Judgment should have been entered thereon instead of *non obstante.* This

necessitates reversal of the judgment entered in the circuit court.  Costs to appellant.

Nelson Sharpe, C. J., and Potter, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.